IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SUSAN DAVENPORT, et al.                                           PLAINTIFFS

v.                                      No. 4:21-cv-879 JM

CITY OF LITTLE ROCK, et al.                                       DEFENDANTS

<u>ORDER</u>

This case arises out of the execution of two no-knock warrants on September 1, 2016  by

the Little Rock Police Department's narcotics officers and SWAT team at two separate structures

located on King Road in Pulaski County, Arkansas.  Plaintiff filed suit against Little Rock Police

Department ("LRPD") detectives Amber Kalmer and Russ Littleton ("the Narcotics

Defendants"); Lieutenant Timothy Calhoun, Sergeant Jason Follett and Officer Matthew Thomas

members of the Special Weapons and Tactics unit  ("the SWAT Defendants"); Sergeant Vicky

Keathley assigned to the LRPD Internal Affairs Division and Captain Kenneth Temple assigned

to head the Deadly Force Review Board ("the Investigation Defendants") (together these

defendants are referred to as "the Separate Defendants"); the City of Little Rock and former

Police Chief Kenton Buckner.  The complaint alleges Fourth Amendment violations in obtaining

the no-knock search warrant, failing to obtain two separate warrants (alleged in Plaintiff's

response to the motion for summary judgment), the execution of the warrant; an excessive force

claim against Defendant Thomas for the use of deadly force; a *Monell* claim against the City; a

§1983 civil conspiracy claim between Buckner and each of the Separate Defendants; and

Arkansas state law claims for malicious prosecution, false arrest, battery and intentional

infliction of emotional distress.

There are two motions for summary judgment pending, one filed by the City and Buckner

and one filed by the Separate Defendants. (ECF. Nos. 42 and 38).  In responding to the motions for summary judgment, Plaintiffs failed to respond to the motions with respect to the Arkansas state law claims for malicious prosecution, false arrest, battery and intentional infliction of emotional distress.  The Court finds that Plaintiffs abandoned these claims.  The defendants are entitled to summary judgment on these state law claims. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.

<u>Facts</u>

This case centers on the execution of two search warrants for a shop and residence on King Road in Little Rock, Arkansas.  Plaintiffs "dispute the validity of the affidavit and warrant issued on August 17, 2016 for the residence."  Plaintiffs claim that these documents were never seen until after this lawsuit was filed.  Further, Plaintiffs challenge the existence of the documents prior to the raids at issue and argue that they were manufactured after the raids. Plaintiffs have failed to demonstrate a genuine issue of fact supporting their theory.   "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial*." Gibson v. Am. Greetings Corp*., 670

F.3d 844, 853 (8th Cir. 2012) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*., quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

Defendants have submitted the affidavit of Tiffany Keene, the Chief Court Clerk of the Little Rock District Court-Criminal Division.  (ECF 99-2).  Ms. Keene is the Chief Court Clerk of the Little Rock District Court – Criminal Division and custodian of the records of the Criminal Division, she also worked for Little Rock District Judge, Alice Lightle during her time on the bench.  Ms. Keene searched the archives of the court to find the two affidavits and search warrants executed in this case dated August 17 and 31, 2016.  Ms. Keene located both and included a certified copy of the original documents with her affidavit.  *(Id.)*.  Ms. Keene testified that based on her experience with Judge Lightle, both warrants bear Judge Lightle's signature. Although the August 31 warrant bore the District Court seal and the August 17 warrant did not, Ms. Keene testified that the original signed separate warrants have been continuously maintained in the District Court records.  Defendants also produced the affidavit of Jennifer Johnson, Attorney Bill Mann's paralegal, who testified that she included the warrants at issue in this case during discovery in another lawsuit involving Plaintiffs' attorney, Michael Laux sometime before March, 2019 well before this case was originally filed in August, 2019. (ECF 99-1). Finally, Plaintiffs reliance on testimony of officers involved in the September 1 raid in which they reference the execution of "a warrant" does not call into question the existence of two warrants as the officers were divided into teams with each team executing one of the warrants on September 1.  Further, Lt. Calhoun, incident commander of the raid, gave testimony on September 1 and 2, 2016 in which he refers to two narcotics search and seizure warrants which

were to be served simultaneously. (ECF 99-3). Based on these facts, the Court finds that no genuine issue of fact remains regarding the existence of two separate warrants issued in August, 2016 for the house and shop on King Road.

Based on the Affidavit of Detective Amber Kalmer (Kalmer") dated August 17, 2016, she was contacted on that day by a confidential informant ("CI") who reported that Amy St., Clair was distributing MDMA, commonly known as ecstasy, from a residence located at 3320 King Road in Little Rock, Pulaski County, Arkansas. (ECF 38-7, p. 10). That informant stated that Amy St Clair lived at the residence and usually sells her narcotics from this residence. (*Id.*). Detective Kalmer met with the CI at a prearranged location on the same date for the purpose of arranging a MDMA purchase from Amy St. Clair. (*Id*, p. 11). The CI advised that he or she could purchase small quantities of MDMA from Ms. St. Clair under the direction of the narcotics detectives. (*Id*.). Prior to the arranged buy, Kalmer searched the CI to ensure that the CI did not have any money, weapons, or contraband such as illegal narcotics. (*Id*.). Kalmer gave the CI $300 to make the buy from Ms. St. Clair. (*Id.*).

Kalmer  and Detective Russ Littleton ("Littleton) followed the CI to the area of 3320 King Road and set up a surveillance position. (*Id*.). Kalmer observed the CI drive and park in the driveway of the residence of 3220 King Road. Kalmer observed a white Ford Crown Victoria turn down King Road and park in the driveway of 3320 King Road. After five minutes Kilmer and Littleton followed the CI to a prearranged location. (*Id*.). At the prearranged location the CI handed over a baggie with approximately 15 tablets of suspected MDMA. ( *Id.).* The CI informed the detectives that Ms. St. Clair had contacted the CI on several occasions claiming to have a large quantity of MDMA and manufacturing MDNA at 3220 King Road. (*Id*.). The CI informed the detectives that he or she parked their vehicle and waited on Ms. St.

Clair.  Ms. St. Clair arrived driving a white Ford Crown Victoria.  (*Id*.).  The CI approached St. Clair and handed over the $300 given to her by Kalmer in exchange for the baggie of narcotics. (*Id.* p. 12).  Kalmer searched the CI again and did not find any hidden money or contraband.

Following the controlled buy, Kalmer submitted a search warrant affidavit to Little Rock District Court Judge Alice Lightle that included the facts related to the controlled buy and the assertion that the CI has provided information to the LRPD on at least five occasions that had proven to be correct by independent sources and personal observations. (*Id*. p. 12).  Kalmer also stated that during her seven-year career with the LRPD she had participated in execution of numerous search and seizure warrants, the majority of which involved dynamic entries into residences "whereby the element of surprise was utilized to prevent the destruction of the evidence sought and to provide a greater degree of safety for both the executing officers and individuals present at the location where the warrant was being executed." (*Id.)*.  Kalmer also stated that "based on her experience that individuals dealing in illicit narcotics have access to firearms and will readily arm themselves to protect this contraband" and that executing the warrant without the knock-and-announce requirement "would greatly reduce the risk to and increase the safety of the executing officers and occupants . . .and the likelihood of the evidence sought being disposed of or destroyed would also be greatly diminished." (*Id.* p. 12-13*)*.   On August 17, 2016, Judge Lightle issued the search warrant, which excluded the knock-and-announce requirement for the residence located at 3220 King Road. (ECF. No. 38-7 p. 14-15). Plaintiffs deny the existence of the affidavit and warrant dated August 17, 2016 claiming that they were manufactured after the date of the raid. For the reasons stated above, the Court finds that the Plaintiffs failed to present proof sufficient to create a question of fact on the existence of the affidavit and warrant.

On August 29, 2016, Kalmer was contacted by the same CI who stated that Susan Davenport was distributing methamphetamine from a shop located at 3220 King Road in Little Rock.  (ECF 61, ¶31, and 38-7, p. 16).  That informant stated that Ms. Davenport lived at the residence of 3220 King Road and usually sells her narcotics from the shop.  (ECF 38-7, p. 16).  The CI advised that they could purchase small quantities of methamphetamine from Ms. Davenport under the direction of the narcotics detectives.  (*Id*., p. 16-17).  On the same date, Kalmer met with the CI at a prearranged location to arrange a controlled buy.  Kalmer searched the CI to ensure the CI did not have any hidden money or contraband.  (*Id.,* p. 17).  Kalmer gave the CI $340 to make the buy from Ms. Davenport. (*Id.).*

Kalmer and Littleton followed the CI to the area of 3320 King Road and set up a surveillance position. (*Id*.) Kalmer observed the CI drive and park in front of the shop at 3220 King Road. (*Id*.).  After approximately ten minutes the CI was seen driving away from the location.  Kalmer and Littleton then followed the CI to a prearranged location where the CI turned over a baggie full of suspected methamphetamine.  (*Id*.).  The CI informed the detectives that he or she pulled up to the shop and waited on Davenport.  Once the CI made contact with Davenport by phone, he or she stepped out of the vehicle and approached the shop.  (*Id*.).  According to the CI, Ms. Davenport came out of the front of the shop and stood in the doorway. (*Id*.).  Ms. Davenport then handed over what was represented to be $340.00 worth of methamphetamine in exchange for the Little Rock Police Department buy money.  (*Id*., p. 17-18).  After receiving the narcotics Kalmer searched the CI again for contraband, none was found. (*Id*. at 18).

Plaintiffs deny facts alleged in the affidavit and state that Susan Davenport has never sold drugs.  Plaintiffs argue that the fact that Ms. Davenport was never arrested supports their

6

argument.  Plaintiffs argue that the search of the CI violated LRPD policy because it permitted the entry of contraband into the controlled buy, the officers failed to maintain visual or electronic monitoring of the CI, the CI was not reliable, and the CI was not approved by the Divisional Lieutenant as required by LRPD policy.

Following the controlled buy, Kalmer submitted a search warrant affidavit to Little Rock District Court Judge Alice Lightle that included the facts related to the controlled buy and the assertion that the CI has provided information to the LRPD on at least five occasions that had proven to be correct by independent sources and personal observations. (*Id*.).  Kalmer also stated that during her seven-year career with the LRPD she had participated in execution of numerous search and seizure warrants, the majority of which involved dynamic entries into the residence/shop "whereby the element of surprise was utilized to prevent the destruction of the evidence sought and to provide a greater degree of safety for both the executing officers and individuals present at the location where the warrant was being executed." (*Id.).*  Kalmer also stated that "based on her experience that individuals dealing in illicit narcotics have access to firearms and will readily arm themselves to protect this contraband" and that executing the warrant without the knock-and-announce requirement "would greatly reduce the risk to and increase the safety of the executing officers and occupants of the shop." (*Id.).*  On August 31, 2016, Judge Lightle issued the search warrant as requested, which excluded the knock-and-announce requirement. (*Id*., p. 20-21).

Based on the affidavits of Amber Kalmer, Timothy Calhoun, Jason Follett, Travis Cumming, and Matthew Thomas, on September 1, 2016 at 0530 the officers participated in a briefing regarding the execution of two search warrants that were to be served simultaneously. (ECF 38-7,38-9,38-10, 38-11 and 38-12).  The Pulaski County Sheriff's Office was to assist due

to the fact that the residence and shop were actually located in Pulaski County. (ECF 38-7 , p.6). During the briefing Kalmer informed the officers that during her work on the two warrants she had observed posts on Amy St. Clair's Facebook page in which she was shown shooting two types of guns on the property to be searched, a handgun and some type of automatic or semiautomatic weapon.  (ECF 38-7, p. 6, 38-9, p. 2. 38-10, p.2, 38-11, p.2 and 38-12, p.2).

        Plaintiffs dispute that Kalmer observed the videos prior to the execution of the warrants. Plaintiffs rely on the fact that this information was not contained in the Warrant Service Information forms along with alleged testimony of Kalmer at her deposition.  The officers explain that the Warrant Service Information Sheets noted that it was unknown whether weapons were present because they were not absolutely certain, however, the officers could not discount the possibility that they would encounter armed suspects based on the information provided during the briefing. ( ECF 38-9, p.2, and 38-10, p. 2 ).  Plaintiffs' reliance on the absence of the information on the Warrant Service Information Sheets is insufficient to create a question of fact on this issue.  Further, Plaintiffs claim that Kalmer testified in her deposition that she had not seen the videos of Amy St. Clair shooting weapons on the property prior to September 1, 2016. This is a mischaracterization of her testimony.  In fact, the following colloquy occurred:

           15 Q All right. So did you have any reason to believe that

           16 there'd be firearms at either of the locations on King

           17 Street -- King Road?

           18 A Yes. Yes, sir.

           19 Q And what were the basis -- What's the basis for that?

           20 A Amy St. Clair had posted several videos of her

           21 shooting weapons at what appeared to be up there at 3220

22 King Road.

23 Q Right. But you hadn't seen those prior to the

24 no-knock raid.

25 A I never had interaction with Amy, so no, sir.

(ECF 60-11, p. 71, l. 15-25).  Based on the facts demonstrated above, Plaintiffs failed to create a

genuine issue of fact supporting their contention that the officers were unaware of the video

evidence prior to the no-knock raid.

The undisputed facts demonstrate that after the SWAT team made entry into the shop

building and announced their presence, Officer Thomas encountered an armed occupant, later

identified as Lloyd St. Clair, in a bedroom of the building.  Officer Thomas fired his LRPD

issued rifle at Mr. St.  Clair and struck him three times.

After both the residence and shop were searched on September 1, 2016, evidence was

collected.  At the house, a small amount of marijuana was discovered.  As a result, Chris

Davenport was arrested for possession of a controlled substance, a Class A misdemeanor.  Susan

Davenport was not arrested and no formal charges were brought against her.  At the shop, the

following was recovered during the search: (a) two (2) baggies with crystalline substance located

in the middle office; (b) folded pieces of aluminum foil with residue located in the middle office;

(c) glass pipe with residue located in the middle office; (d) straw and container with residue

located in the middle office; (d) three (3) containers and one (1) baggie of green vegetable matter

located in a safe in the middle office; (e) two (2) green pills with the imprint of S902,

Amphetamine, located in a safe in the middle office; (f) U.S. Currency $700.00 (approved to

seize by Matt Staufer with the Prosecuting Attorney's Office) located in a safe in the middle

office; (g) digital scale located in the middle office; (h) baggie with green leafy matter located in

9

the southeast office; (i) black digital scale located in the southeast office; (j) three (3) pink pills with the imprint of COT134, Alprazolam, located in the southeast office; (k) marijuana seeds in a container located in the southeast office; (l) paperwork located in the middle office; (m) miscellaneous live rounds located in the southeast office; (n) unknown caliber rifle located in the southeast office; (o) Steven's 20 gage shotgun located in southeast office; (p) Winchester shotgun with duct tape (Serial #C604644) located in the southeast bedroom; and (q) miscellaneous live rounds located in the southeast bedroom.  As a result of the search of the shop, Floyd St. Clair was charged with Possession of Methamphetamine with Purpose to Deliver, Possession of Schedule II with Purpose to Deliver, Possession of Schedule IV with Purpose to Deliver, Possession of Marijuana with Purpose to Deliver, Possession of Drug Paraphernalia, Maintaining a Drug Premises, Simultaneous Possession of Drugs and Guns, and Possession of Firearm by Certain Person.  The Prosecuting Attorney later charged Floyd St. Clair with aggravated assault against Officer Matt Thomas.

<u>The Separate Defendants' Motion for Summary Judgment</u>[1]

In Count I, Plaintiffs claim that Detectives Kalmer and Littleton (the Narcotics Defendants) violated the Fourth Amendment to the U.S. Constitution when then they allegedly made misrepresentations in the affidavit in order to obtain a search warrant which was used to search two separate structures located on King Road in Pulaski County, Arkansas. As previously discussed, Plaintiffs contend that the affidavit and warrant executed on August 17, 2016 for the residence located at 3220 King Road was generated or produced after September 1, 2016 to conceal the unconstitutional search of the two separate structures.  As the Court has explained, based on the uncontroverted evidence which includes the certified copies of the affidavit and

---

[1] The Court will examine the remaining claims not abandoned by Plaintiffs in their response to the motions for summary judgment.

warrant dated August 17, 2016 maintained in the files of the Little Rock District Court –
Criminal Division, Plaintiffs failed to demonstrate a genuine issue of fact supporting their theory.
Plaintiffs also argue that Kalmer and Littleton misrepresented that the house and shop on King
Road had the same address and failed to follow policy regarding the use and monitoring of the
CI.

Count II is filed against the Narcotics Defendants and the SWAT Defendants for
violation of the Fourth Amendment based on an alleged "unlawful entry."  Plaintiffs claim these
defendants engaged in unconstitutional conduct by: (1) executing a search and seizure warrant on
the dwelling at 3220 King Road on September 1, 2016, without a basis in law for a search and
seizure at that address; (2) executing a search and seizure on the dwelling at 3114 King Road on
September 1, 2016, without a court-issued warrant authorizing a search and seizure at that
address; (3) failing to prevent the search and seizure of the dwelling at 3220 King Road on
September 1, 2016, because there was no basis in law for the search and seizure; (4) failing to
prevent the search and seizure of the dwelling at 3114 King Road on September 1, 2016, because
there was no court issued warrant authorizing the search and seizure; and (5) executing "no-
knock" raids on the dwelling at 3220 King Road and 3114 King Road despite the lack of a "high
risk" situation and other criteria.

The allegations in Count III are limited to Defendant Thomas. Plaintiffs assert that
Officer Thomas employed excessive force in violation of the Fourth Amendment when he used
deadly force in response to a threat posed by Plaintiff Lloyd St. Clair.

In Count V, Plaintiffs allege a civil conspiracy by each of the Separate Defendants and
former Chief Buckner in order to deprive Plaintiffs of their constitutional rights. The alleged acts
in furtherance of the conspiracy are: (1) the execution of a no-knock raid at 3220 King Road

despite the fact that the Narcotics Defendants and SWAT Defendants did not have a legal basis;

(2) the execution of a no-knock raid at 3114 King Road despite the fact that the Narcotics

Defendants and SWAT Defendants did not contain a warrant to search that address; (3)

concealing the fact that there was no legal basis to search the dwelling at 3220 King Road; (4)

conspiring to conceal that a warrant was never obtained to search 3114 King Road; and (5)

misrepresenting that 3114 King Road was actually 3220 King Road to conceal the fact that there

was no legal basis to enter either structure. Plaintiffs contend the alleged conspiracy violated

their rights under the Fourth and Fourteenth Amendments.

The Separate Defendants' summary judgment motion seeks qualified immunity on the

claims that they violated Plaintiffs' Fourth Amendment rights in obtaining the search warrants in

executing them and in the use of force. They also seek summary judgment on the civil

conspiracy claim. To resolve the issue of qualified immunity, the Court undertakes a two-part

inquiry to determine: (1) whether the facts viewed most favorably to the plaintiff make out a

violation of a constitutional right, and (2) whether that right was clearly established at the time of

the challenged conduct. *Masters v. City of Indep., Missouri*, 998 F.3d 827, 835 (8th Cir. 2021);

*Watson v. Boyd*, No. 20-1743, 2021 WL 2671317 (8th Cir. June 30, 2021). The Court will

undertake this analysis separately for each of the alleged Fourth Amendment violations.

Obtaining the search warrants (Detectives Kalmer and Littleton) and use of the CI

The Fourth Amendment protects an individual's right to be free from unreasonable

searches and seizures and provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002); U.S.

CONST. Amend. IV. Plaintiffs had a constitutional right to be free from having a warrant issued

in the absence of probable cause. That right was clearly established by September of 2016, which leaves the question of whether viewing the evidence in the light most favorable to Plaintiffs, the Separate Defendants are entitled to summary judgment.

"Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wallace,* 550 F.3d 729, 732 (8th Cir. 2008) (citations and internal quotation marks omitted). A warrant may be invalidated if a police officer deliberately or recklessly makes false statements to demonstrate probable cause for a warrant. *Franks v. Delaware,* 438 U.S. 154 (1978). To establish a *Franks* violation based on the omission of material facts, a plaintiff must prove: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 686 (8th Cir. 2019) (quoting *United States v. Box*, 193 F.3d 1032, 1035 (8th Cir. 1999)). The omitted information must be "*clearly critical* to the finding of probable cause." *Hawkins v. Gage Cnty., Neb.*, 759 F.3d 951, 959 (8th Cir. 2014) (quoting *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir. 1986) (emphasis added). Similarly, to establish a *Franks* violation for including false statements, a plaintiff must prove "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1311 (8th Cir. 2014) (quoting *United States v. Humphreys,* 982 F.2d 254, 259 n. 2 (8th Cir. 1992)).

Having found that Plaintiffs failed to present sufficient evidence to create a genuine issue

of fact regarding the existence of the two warrants for the two structures located on King Road

prior to the September 1, 2016 raid, the court will examine whether the affidavit and warrants

adequately describe the structures to be searched; whether the affidavit and warrant reflecting the

wrong address of the shop, as alleged by Plaintiffs, is fatal to a determination of probable cause

to issue the warrant for the shop, and whether the failure to follow LRPD policy with regard to

the Confidential Informant gives rise to a constitutional violation.

Plaintiffs argue that the residence and shop searched on King Road bore separate

addresses requiring two warrants with the proper address in order to be legally searched.

Plaintiffs allege the warrant for the shop was unconstitutional because it inaccurately reflected an

address for the shop at 3220 King Road instead of 3114 King Road.  Even if the shop did have a

separate address from the residence, a fact challenged by the Defendants, the affidavit and

warrant for the shop accurately described the premises as a building, yellow in color with doors

facing east.

> The test for determining the sufficiency of the description of the place to be searched is
> whether the place to be searched is described with sufficient particularity as to enable the
> executing officer to locate and identify the premises with reasonable effort, and whether
> there is any reasonable probability that another premise might be mistakenly searched.

*United States v. Skarda*, 845 F.3d 370, 377 (8th Cir. 2016)(citing *United States v. Gitcho*, 601 F.

2d 369, 371 (8th Cir. 1979).   Here the description of the location of the shop was sufficient to

meet this standard.  See*, Lyons v. Robinson*, 783 F.2d 737(8th Cir 1985) (finding an error in the

address did not render the warrant inadequate).

Finally, Plaintiffs argue the officers failed to follow policy as to the use of the CI.  The

Eighth Circuit has repeatedly held that "police department guidelines and policies do not give

rise to a §1983 action."  *Christiansen v. Eral*, 52 F4th 377, 379 (8th Cir 2022), *citations omitted*.

Even "knowing violation of department policy doesn't transform [the officers'] action into

unconstitutional behavior." *Id.* Plaintiffs allege the officers failed to monitor and completely search the CI and failed to obtain the proper departmental approval for the use of the CI. These allegations do not state a constitutional violation or raise a *Franks* violation.

The Court finds that the warrant affidavits established probable cause that drugs were being sold from the residence and shop on King Road and that Plaintiffs have failed to establish a *Franks* violation. The Narcotics Defendants are entitled to qualified immunity on this claim.

Executing the no-knock warrant, unlawful entry.

Next the Court must determine if the Narcotics Defendants and SWAT Defendants are entitled to qualified immunity on Plaintiffs' claims that their Fourth Amendment rights were violated in the execution of the no-knock warrant.

The officers argue that there was no Fourth Amendment violation in the execution of the warrants and that they relied in good faith on the warrants' no-knock authorization. "[A] warrant generally confers a 'shield of immunity' to officers acting within the scope of its authority" on the premise that "where a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546-548 (2012)). Officers are not entitled to the benefit of this shield when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For good reason, "the threshold for establishing this exception is a high one." *Id*.

*Wilson v. Arkansas*, 514 U.S. 927 (1995), established that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment" and noted that circumstances may justify an unannounced entry. *Id.* at 929. In *Richards v.*

15

*Wisconsin,* 520 U.S. 385 (1997), the Court rejected the adoption of a blanket exception to the knock-and-announce requirement in the execution of search warrant arising from a felony drug investigation, holding "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* at 394. The Court described the reasonable suspicion requirement as "not high" and determined that "[t]his standard—as opposed to a probable-cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns . . . and the individual privacy interests affected by no-knock entries." *Id.*

Plaintiffs' response to the Separate Defendants' motion for summary judgment significantly narrows the scope of the qualified immunity analysis. Plaintiffs argue that it was clearly established in 2003 [sic] that using explosive devices in situations the LRPD historically used them was inappropriate, needlessly dangerous and thus, unconstitutional. (ECF 60, p. 38). In *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672 (8th Cir. 2019), the Eighth Circuit found that the reasonableness of the use of flash-bang grenades depends on the circumstances. In *ZJ,* the court held that the SWAT team members were not entitled to qualified immunity because "it was clearly established in 2010 that the use of flash-bang grenades is unreasonable *where officers have no basis to believe they will face the threat of violence* and they unreasonably fail to ascertain whether there are any innocent bystanders in the area it is deployed." *Id.* at 685.

Here, as previously discussed, during the pre-raid briefing Kalmer informed the officers that during her work on the two warrants she had observed posts on Amy St. Clair's Facebook page in which she was shown shooting two types of guns on the property to be searched, a

handgun and some type of automatic or semiautomatic weapon.  (ECF 38-7, p. 6, 38-9, p. 2. 38-10, p.2, 38-11, p.2 and 38-12, p.2).  Further, the only named defendant who utilized the distraction devise, Officer Thomas, testified that prior to deploying the devise he scanned the deployment area. The evidence establishes that the use of the distraction device in the shop was not unreasonable.  Thomas had been advised of the potential threat posed at the shop and he looked to determine if there were any innocent bystanders prior to deployment.   The use of the distraction device was objectively reasonable and consistent with the law contained in the *Z.J.* case.

<u>Use of Deadly Force</u>

Plaintiffs allege that Officer Thomas' use of deadly force during the execution of the search warrant at the shop was objectively unreasonable.  "Officers' excessive uses of force violate the Fourth Amendment if 'objectively unreasonable.'" *Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 397(1989)). "Objective unreasonableness is 'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case ....'" *Id.* (quoting *Graham*, 490 U.S. at 396).

> "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012).  While "mere possession of a firearm" is not enough, this Court has recognized that an individual pointing a firearm at another or otherwise moving a firearm in a "menacing action" generally gives officers probable cause to use deadly force.  *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (citations omitted).

*Partridge v. City of Benton, Arkansas*, 70 F.4th 489, 493–94 (8th Cir. 2023) Shepherd, dissenting.

Relying on alleged inconsistencies in Officer Thomas' statements, Plaintiffs claim that Lloyd St. Clair did not pose an immediate threat to Officer Thomas when he shot Mr. St. Clair

during the execution of the search warrant.  The undisputed facts demonstrate that after the

SWAT team made entry into the shop building and announced their presence, Officer Thomas

encountered an armed occupant, later identified as Lloyd St. Clair, in a bedroom of the building.

Officer Thomas fired his LRPD issued rifle at Mr. St.  Clair and struck him three times.  Later,

Plaintiff, Lloyd St. Clair, while being represented by private counsel, accepted a plea deal from

the Prosecuting Attorney's Office and plead guilty to one (1) Felony Class D charge of

Aggravated Assault, one (1) Felony Class B charge of Possession of Drug Paraphernalia, one (1)

Felony Class C charge of Possession of controlled substance with intent, two (2) Felony Class D

charges of Possession of controlled substance with intent, (1) Felony Class D charge of

Possession of Drug Paraphernalia, and one (1) Misdemeanor Class A charge of Possession of

controlled substance. On May 11, 2017, Plaintiff, Lloyd St. Clair, was sentenced to five (5)

years' probation, 120 days in the Pulaski County Jail, $2,000 fine and court costs, drug testing

and treatment, and six months of driver's license suspension.

    The facts demonstrate that during the execution of the search warrant on the shop, Officer

Thomas was the first officer to enter the shop and he said "police, search warrant" as he entered.

(ECF 61, #104).  Officer Thomas observed a white male wearing a bright green shirt sitting

behind a desk.  He ordered the male to show his hands and he complied.  The male was later

identified as Floyd St. Clair.  (*Id*., 105 and 106).  As Officer Thomas proceeded into another

room of the shop, he observed a white male holding a shotgun, with his right hand and the barrel

of the shotgun with his left hand and pointing in an upward direction.  (*Id.,*112).  Officer Thomas

states that Mr. St. Clair held the shotgun in the high ready position and as the two began to see

each other, Mr. St. Clair began to lower the shotgun in a manner as to fire the gun. Officer

Thomas stated that the barrel of the shotgun began lowering and pointing at Officer Thomas at

the same time Mr. St. Clair began to step to his right, going out of sight behind a wall.  Officer Thomas alleges he gave the verbal commands to drop the weapon and because he was in fear that Mr. St. Clair was about to begin shooting from behind the wall, Officer Thomas fired three rounds into the wall where Mr. St. Clair had moved.  Officer Thomas then stepped to the right to see into the doorway to see Mr. St. Clair.  He saw Mr. St. Clair crouching down, still holding the shotgun and manipulating the shotgun in a manner such that it appeared he was trying to fix a malfunction.  Again, Officer Thomas gave verbal commands to drop the shotgun, but Mr. St. Clair continued to try to reload the shotgun.  Officer Thomas alleges that it appeared Mr. St. Clair was trying to shoot him, so he fired five rounds, three of which struck the doorframe and two of which hit the subject.

On May 11, 2017 Mr. Lloyd St. Clair appeared before the Honorable Herbert T. Wright, Jr, and pled guilty in part to aggravated assault.  During the plea colloquy Mr. St. Clair admitted to pointing a firearm at Officer Matt Thomas on September 1, 2016.  On December 13, 2022, Mr. Lloyd St. Clair testified in his deposition that he was holding his gun trying to unjam it while blood was running down his arm.  He also admitted to signing a plea statement acknowledging his guilt of aggravated assault, including that the State of Arkansas could prove his guilt beyond a reasonable doubt.

Plaintiffs argue that at the time Officer Thomas shot Mr. St. Clair, St. Clair did not pose an objectively reasonable threat.    What is "objectively reasonable under the particular circumstances" is evaluated "from the perspective of a reasonable officer on the scene," and turns on "those facts known to the officer at the precise moment [he] effectuate[d] the seizure." *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995).  *See,  Partlow v. Stadler*, 774 F.3d 497, 502 (8th Cir. 2014) (finding use of deadly force objectively reasonable where suspect "move[d] the

shotgun in such a way that the officers believed [he] was aiming the barrel of the shotgun at them").

Viewing the evidence in the light most favorable to Mr. St. Clair, the Court finds that Officer Thomas's use of deadly force was objectively reasonable.  When Officer Thomas encountered Lloyd St. Clair at the scene, Mr. St. Clair was holding his shotgun in an upward position.  As Mr. St. Clair moved, as admitted by St. Clair in his pleas statement and during his plea colloquy, Mr. St. Clair lowered the weapon pointing it at Officer Thomas.  Officer Thomas gave the verbal commands to drop the weapon and but testified that because he was in fear that Mr. St. Clair was about to begin shooting from behind the wall, Officer Thomas fired three rounds into the wall where Mr. St. Clair had moved.  Officer Thomas then stepped to the right to see into the doorway to see Mr. St. Clair.  He saw Mr. St. Clair crouching down, still holding the shotgun and manipulating the shotgun in a manner such that it appeared he was trying to fix a malfunction.  Again, Officer Thomas gave verbal commands to drop the shotgun, but Mr. St. Clair continued to try to reload the shotgun.  Officer Thomas alleges that it appeared Mr. St. Clair was trying to shoot him, so he fired five rounds, three of which struck the doorframe and two of which hit the subject. At the time the shots were fired, a reasonable officer in Officer Thomas's position would have probable cause to believe that Mr. St. Clair posed a threat of physical of serious physical harm.  Any possible mistake in perceiving that he posed such a threat was objectively reasonable.  *Partlow*, 774 F.3d at 503.

Civil conspiracy.

Because the Court has found that the detectives did not violate Plaintiffs' Fourth Amendment rights, the § 1983 claim for civil conspiracy necessarily fails. *See Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 702 (8th Cir. 2020).

<u>The City and Kenton Buckner's Motion for Summary Judgment</u>

<u>The City and Buckner in his official capacity.</u>

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a city may be liable under § 1983 for a constitutional violation if the violation resulted from an official municipal policy or an unofficial custom or practice. The official capacity claim against Buckner is treated as a claim against the City. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Before municipal liability can attach, "individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005). Since the Court has found that the Separate Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claims, there can be no municipal liability stemming from their actions. The City and Buckner in his official capacity are entitled to summary judgment.

<u>Buckner in his individual capacity.</u>

Kenton Buckner was Chief of the Little Rock Police Department at the time of the search of the Plaintiffs' shop and residence in 2016. He had final decision-making authority to create policies within the LRPD. Viewing the facts most favorable to Plaintiffs, Buckner had maintained an official policy that required LRPD officers to use the SWAT team to execute all search warrants when narcotics were involved; see April 7, 2014 internal memo referencing "a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants." (ECF. 63-1). In their arguments, Plaintiffs vigorously challenge the use of no-knock warrants by the LRPD. In doing so, they incorrectly conflate the policy of utilization of the SWAT team with the execution of no-knock warrants. Plaintiffs point to no evidence that the use of no-knock warrants was part of the policy established by Buckner. Plaintiffs refer to the April 7, 2014

memo as the "no-knock mandate" but the memo does not mention no-knock warrants.

To determine Buckner's claim for qualified immunity, the Court has to determine whether the policy to use SWAT to execute all narcotics warrants caused a Fourth Amendment violation and whether that violation was clearly established in September of 2016. Plaintiffs rely on *Richards v. Wisconsin*, 520 U.S. 385 (1997) to establish the bright line required in the second prong of the analysis. However, nothing in *Richards* forecloses a policy of using the assistance of a SWAT team to execute warrants in narcotics cases.

The Eighth Circuit has acknowledged that "[a]n officer's decision to authorize a SWAT team to execute a warrant can, in some cases, constitute a Fourth Amendment Violation." *Z.J.* 931 F.3d at 688 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1189–92 (10th Cir. 2001). The court stated, "it is clear the decision to send a SWAT team into a residence must be reasonable." *Id.* at 688. However, the Eighth Circuit declined to decide whether the detectives' decision to utilize the SWAT team in *Z.J.* was reasonable. The court called it a "close question" as to whether there had been a constitutional violation under the facts of the case, but concluded that even if there was a violation, the law was not clearly established that "using a SWAT team to execute a [knock-and-announce] search warrant under these circumstances violated the Constitution." *Id.* Likewise, Plaintiff does not point to any law establishing that as of September of 2016 it was unreasonable to utilize a SWAT team in the execution of a no-knock warrant.

Therefore, without deciding if the existence of the policy was a constitutional violation, the Court finds that it was not clearly established that the policy violated the Fourth Amendment in the summer of 2016. Therefore, the Court finds that Buckner is entitled to qualified immunity.

Even if the Court accepted the conflation of no-knock warrants with the use of SWAT

teams, the facts in *Richards* were that the investigating officers had applied for no-knock authorization in their warrant, that request was *rejected* by the magistrate, and the officers made a decision in the course of executing the warrant to enter without knocking and announcing their presence. The United States Supreme Court reversed the decision of the Wisconsin Supreme Court that "police officers are *never* required to knock and announce their presence when executing a search warrant in a felony drug investigation." *Id.* at 387. In the present case, Kalmer and Littleton applied for and *received* no-knock authorization from the magistrate. Nothing in Buckner's policy mandated the use of no-knock entry in the execution of all warrants involving narcotics *without* having prior no-knock authorization from a magistrate.

Conclusion

The Motions for Summary Judgment filed by both the City Defendants and the Defendant Officers (ECF No. 38 and 42) are GRANTED. The remaining motions (ECF Nos. 50, 71, 73, 75, 77, 79, 81, 83, 85, 87, 89, 91, 93, 95 and 97) are MOOT.

IT IS SO ORDERED this 11th day of July, 2023.

_____
UNITED STATES DISTRICT JUDGE